**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Lester Oglesby | ) | |
| | ) | Civil Action No. 0:10-3042-RMG |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| Michael J. Astrue, Commissioner | ) | |
| of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff filed this action, pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of the final decision of the Commissioner of the Social Security Administration regarding his claim for Supplemental Security Income (SSI). In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to a United States Magistrate Judge for pretrial handling. The Magistrate Judge recommended the decision of the Commissioner be affirmed. For reasons set forth below, the Court reverses the decision of the Commissioner and remands the matter for further action consistent with this decision.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and may

accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to her with instructions. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is limited, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

Rules and regulations of the Social Security Administration mandate that the Commissioner make a systematic and careful review of the medical record and other evidence presented by the claimant, which includes a review and weighing of all relevant medical opinions and diagnoses. The Commissioner must evaluate each disability claim utilizing a five step process, which begins at Step One with a determination whether the claimant is still employed. 20 C.F.R. § 404.1520(a). If the claimant is not gainfully employed, the Commissioner must

-2-

consider at Step Two the severity of all of the claimant's impairments. An impairment is deemed "severe" if it "significantly limits" the claimant's "physical or mental ability to do basic work activities." § 1520(a)(ii), (c). The Commissioner must then consider at Step Three whether any of the severe impairments of the claimant meet or equal the listings in Appendix 1, which would automatically establish the claimant's disability. § 1520(a)(iii). If the claimant does not meet the requirements of the Appendix 1 listings, the Commissioner must at Step Four assess the claimant's residual functional capacity ("RFC") "based on all the relevant medical and other evidence." § 1520(a)(iv), (e). Assuming that the claimant is not able to perform his or her past relevant work, the Commissioner must assess at Step Five the claimant's RFC and age, education and work experience to determine whether there is other available work the claimant can perform. § 1520(a)(v), (g).

A claim of disability can be based on physical or mental impairments, including visual impairments. A claimant with a best corrected vision of 20/200 is deemed blind at Step Three of the disability analysis. 20 C.F.R. § 404, Subpart P, Appendix 1, § 2.00(a)(2). However, the regulations go on to provide that even if a claimant does not satisfy the objective visual acuity standard for blindness (20/200) "we will also request a description of how your visual disorder impacts your ability to function." § 2.00 (c). The claimant's functional capacity is then evaluated at Step Four when the RFC is determined.

The Commissioner is obligated to consider all "medically determinable impairments" and consider all medical evidence, opinions of medical sources and other evidence. 20 C.F.R. § 404.1545. "Medical opinions" include "statements from physicians and psychologists and other acceptable medical sources that reflect judgments about the nature and severity of [the

-3-

claimant's] impairments, including . . . symptoms, diagnosis and prognosis . . . ." 20 C.F.R. §

404.1527(a)(2).  Special consideration under some circumstances is given to a claimant's treating

physician, and other factors considered by the Commissioner regarding the medical opinions of

health providers include whether the provider examined the patient, the treatment relationship

with the provider and whether the provider is a specialist in the field in which the opinion is

given.  § 1527(d)(1)-(6).  The Commissioner is obligated to "always consider the medical

opinions" available in the record. § 1527(b).  *See also,*  SSR 96-8P, 1996 WL 374184 at *7.

  In addition to analyzing all relevant evidence in the record, including all medical

opinions, the Commissioner has the duty to set forth and analyze in his decision all relevant

evidence and to explain the weight given to all probative evidence.  As the Fourth Circuit stated

in *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984), "[w]e cannot determine if findings

are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given

to all of the relevant evidence."  For instance, in making the RFC assessment, the

Commissioner's decision "must include a narrative discussion describing how the evidence

supports each conclusion" and must explain any conflict between the RFC assessment and any

opinion from a medical source.  SSR 96-8P at *7.  Further, in assessing the credibility of the

claimant regarding his or her subjective complaints, the Commissioner's decision must "contain

specific reasons for the finding on credibility, supported by the evidence in the case record . . .

and must be sufficiently specific to make clear . . . the weight the adjudicator gave to the

[claimant's] statements and the reasons for that weight."  SSR 96-7P, 1996 WL 374186 at *1-2.

Moreover, "[i]t is not sufficient for the adjudicator to make a single, conclusory statement" that

the claimant is not credible. *Id.*

-4-

## Factual Background

Plaintiff applied for SSI benefits on April 20, 2009 at 52 years of age. Plaintiff's claim of disability is based solely on vision loss. Plaintiff has had left eye blindness since a 1975 cataract surgery and has significant vision loss in his right eye. (Tr. 167, 173). The record before the Administrative Law Judge (ALJ) indicated that Plaintiff had a best correctable vision of 20/70 performed by Dr. Leland Bowen, an examining consulting optometrist. (Tr. 173). The Plaintiff's vision was also evaluated by Dr. Boris Ilg, an examining consulting ophthalmologist. Dr. Ilg's testing established a best corrected vision of 20/100-1 in Plaintiff's right eye. He further evaluated Plaintiff's right eye vision with glare and determined that the patient's vision dropped to 20/400. (Tr. 166). Dr. Ilg noted that testing the Plaintiff's vision with glare was "under real world circumstances as opposed to in a dark room." *Id.* The record reflects no other provider evaluated the effects of glare on Plaintiff's actual visual function. Dr. Ilg also documented other abnormalities in Plaintiff's only functioning eye, including a "moderate cataract on the right which is blurring his vision some and to an unknown extent", an epiretinal membrane in the back of the right eye that increases the risk of any cataract surgery and a retinal scar that increases the patient's risk of retinal detachment in the future. *Id.*

The Plaintiff testified at the administrative hearing before the ALJ that he is blind in his left eye and has extremely limited vision in his right eye. (Tr. 41-43). When crossing the street, he indicated that he does this by the sound of cars stopping. He testified that "[w]hen the cars are stopping, I know that I can go." (Tr. 45). He indicated at the hearing that "everything in this room right now looks blurry to me", and he normally has someone go with him to the grocery store "just so I make sure I get everything right." (Tr. 45, 48). Plaintiff testified that he has tried

to adapt to his limited vision but as he has gotten older "I'm scared to go certain places because . . . because I can't see anything . . . ." (Tr. 46). Plaintiff further testified that he was being forced to live with friends because "I don't have no place to live because I can't work . . . ." *Id.* Both Dr. Ilg and a chart reviewing consulting physician found Plaintiff's complaints of severe vision loss credible. (Tr. 162, 167).

The ALJ found at Step Two that Plaintiff had the severe impairments of "blindness and low vision" and at Step Three that his best correctable vision of 20/70 did not satisfy the listing for statutory blindness. (Tr. 10-11). In assessing the Plaintiff's RFC at Step Four, the ALJ noted the best correctable vision finding of 20/70 and concluded that the "objective medical evidence of record" does not support the "severity of his impairments nor the extent of his limitations . . ." claimed by Plaintiff. (Tr. 12). The ALJ did not, however, address Dr. Ilg's finding that Plaintiff had a visual acuity of 20/400 with glare and that this represented for Plaintiff "real world circumstances". (Tr. 166). Further, the ALJ made no assessment of the impact of glare on Plaintiff's ability to function.

The ALJ assessed Plaintiff's credibility and noted that his statements regarding the "intensity, persistence and limiting effects" of his vision loss "are not fully credible to the extent they are inconsistent with the . . . reserve functional capacity assessment." The ALJ found that Plaintiff's description of his symptoms were "quite vague and general, lacking in specificity, which might otherwise make it more convincing." (Tr. 11).

Thus, the ALJ concluded that Plaintiff had the RFC to "perform a full range of work at all exertional levels" but limited him to jobs in which he would not be exposed to moving machinery or heights and would not operate a motor vehicle. (Tr. 11). A hypothetical question

was posed to a Vocational Expert by the ALJ to satisfy Step Five requirements that did not

address Dr. Ilg's finding of 20/400 vision with glare or the impact of glare on Plaintiff's ability to

function. The Vocational Expert concluded that there were available positions in the national

economy in which a person with Plaintiff's best corrected vision of 20/70 could perform. (Tr.

52). These included janitorial work, laundry work and bench work on an assembly line. *Id.* The

ALJ then concluded that Plaintiff was not disabled and denied his application for SSI benefits.

This decision ultimately became the final decision of the Commissioner. Plaintiff thereafter

timely filed this request for judicial review.

### Analysis

The ALJ's decision violates fundamental requirements for the proper assessment of

medical opinions and credibility set forth in regulations adopted pursuant to the Social Security

Act. First, the Commissioner is obligated to "always consider the medical opinions" available in

the record. 20 C.F.R. § 404.1527(b). Medical opinions include "statements from physicians . . .

that reflect judgments about the nature and severity of [the claimant's] impairments, including . .

. symptoms, diagnosis and prognosis . . . ." § 1527(a)(2). Dr. Ilg, the only examining

ophthalmologist in the record, conducted elaborate testing of Plaintiff, including an evaluation of

the impact of glare on his limited vision. This testing established that the impact of glare reduced

Plaintiff's vision to 20/400. (Tr. 166). Although the Commissioner was obligated to consider the

functional impact of Plaintiff's loss of vision at Step Four, no reference was made in the

Commissioner's decision regarding Dr. Ilg's finding that Plaintiff's vision under "real world

circumstances" with glare was actually 20/400 and no assessment was made in which the impact

of glare was even considered. It is notable that the only evidence in the record regarding the

-7-

impact of glare on Plaintiff's vision was by the most highly skilled medical professional who assessed him and that there is no evidence to the contrary in the record.[1]

The Court finds that the ALJ's failure to address and weigh Dr. Ilg's opinion regarding the impact of glare on Plaintiff's vision violated the Commissioner's duty to consider and weigh every medical opinion in the record. §§ 1527(a)(2) and (b), 1545, SSR 96-8P. This is particularly significant in the area of vision loss, where the Commissioner is obligated, even where the claimant's best corrected vision is better than 20/200, to analyze how the "visual disorder impacts [the claimant's] ability to function." Appendix 1, §2.00(c).[2] The decision of the Commissioner is reversed and remanded to consider and weigh the opinion of Dr. Ilg regarding the impact of glare on Plaintiff's vision and ability to function.

Second, the ALJ's finding that Plaintiff's statements regarding the effects of his vision loss were not credible because they were "quite vague and general" and "lacking in specificity" is not supported by substantial evidence in the record. In fact, the record contains numerous highly specific statements by Plaintiff about the impact of his vision loss. These include statements regarding his difficulty in crossing the street (Tr. 45), his need for assistance when going to the grocery store (Tr. 48), his fear in going places because of his inability to see (Tr. 46) and how everyone at the hearing appeared "blurry" to him (Tr. 45). It is notable that Plaintiff's statements about the impact of glare and the blurry appearance of others (Tr. 45) are consistent with Dr. Ilg's

---

[1] §1527(d)(5) provides that "[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."

[2] Consideration of the impact of glare on the Plaintiff's ability to function should have been part of the Step Four analysis.

evaluation, where he specifically referenced the impact of glare and the "blurry" vision caused by the Plaintiff's right cataract. (Tr. 166). Further, all medical providers who commented on Plaintiff's subjective complaints regarding vision loss documented that they found him credible. (Tr. 162, 167).

On remand, the ALJ should review the full record and any finding regarding credibility should "contain specific reasons for the finding on credibility, supported by the evidence in the record . . . and must be sufficiently specific to make clear . . .the weight the adjudicator gave to the [claimant's] statements and the reasons for that weight." SSR 96-7P. This credibility analysis should include consideration of Dr. Ilg's overlooked medical opinion regarding the impact of glare on Plaintiff's vision and whether that opinion tended to support or not support the subjective complaints of Plaintiff regarding his limited ability to function because of vision loss.[3]

### Conclusion

Based on the foregoing, the Court hereby **reverses** the decision of the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g) and 1383(c)(3), and **remands** the matter for further consideration consistent with this Order.

---

[3] SSR 96-7 provides that "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . about the symptoms and how they affect the individual . . . ." SSR 96-7 at *1.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

October 24, 2011
Charleston, South Carolina